Rick ELDRIDGE, Appellant,

v.

STATE of Indiana, Appellee.

No. 3–382A45.

Court of Appeals of Indiana,
Third District.

Aug. 19, 1982.

Nile Stanton, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

Rick Eldridge was found guilty by a jury of theft, a class D felony, and conspiracy to commit armed robbery, a class B felony. He received a sentence of six years and six months for the conspiracy conviction and a concurrent sentence of two years for the theft conviction. The singular issue raised in his appeal is whether Eldridge was denied due process of law and fundamental fairness at trial due to certain questions posed by the prosecuting attorney concerning Eldridge's character.

As part of Eldridge's defense, Marvin Nesius, a local banker, was called as a witness. Defense counsel questioned Mr. Nesius and established that Mr. Nesius had known Eldridge and his family for several years. Mr. Nesius testified that as far as he knew, Eldridge's reputation in the community for truth and veracity had been okay and his reputation for keeping the peace had been good.

During cross-examination of Mr. Nesius by the prosecutor, the following colloquy developed:

"Q  Would it affect your opinion as to the truth and veracity of this individual if you thought that he dealt in drugs?

MR. DUMAS: May we approach the bench, Your Honor?

THE COURT: Granted.

(Counsel at the bench).

(Following objection, response and ruling by the Court made out of the hearing of the jury).

MR. DUMAS: We object to this line of questioning for the reason that it is not proper. It's not proper cross-examination of the witness. There has not been a proper foundation, hasn't been layed. And further we would object on the ground that the direct examination only concerned keeping the peace and

truth and veracity. And any marijuana conviction or any marijuana dealing would have no effect upon those reputations. Further, we would object on the basis that you may not prove bad character by specific bad acts, nor may you prove good character by specific good acts.

MR. NESBITT: The State would respond to the objection of the Defendant that the case law in Indiana clearly provided when the Defendant provided witnesses as to his good character, the State can cross-examine as to specific acts of bad character. This cross-examination is solely for the purpose of testing the extent of the witnesses [sic] knowledge of the Defendant. It can't be based on hearsay and it also can be based upon reputation, I will state.

THE COURT: The objection is sustained on the ground that it assumes a fact not in evidence and from which the Court has no information.

(Discussion at the bench continued).

"Q   Now, Marvin, do you know Rick Eldridge's reputation as to the use of marijuana?

"A   No.

MR. DUMAS: Objection. It is irrelevant and immaterial. Move for a mistrial.

THE COURT: Overruled.

"Q   Marvin, do you know this individuals [sic] reputation for the use of, what is commonly called, Tee or Tic or tetrahydrocannabinol?

MR. DUMAS: To which we will object on—

"A   No.

MR. DUMAS: the basis, it's not relevant and not material to any issue in this and move for a mistrial.

THE COURT: Overruled.

MR. DUMAS: We would ask for a continuing objection to this line of questioning. It is far afield from the issues in this case.

THE COURT: Granted to continuing objection.

"Q   Do you know Rick Eldridge's reputation as to the use of LSD?

"A   No.

"Q   Do you know Rick Eldridge's reputation as to beating up his girlfriend?

"A   No.

MR. DUMAS: To which we will object.

THE COURT: Overruled.

"Q   Do you know Rick Eldridge's reputation as to dealing in drugs?

"A   No.

"Q   Do you know Rick Eldridge's reputation as to dealing and the receiving of stolen tapes and reselling them?

"A   No.

"Q   Do you know Rick Eldridge's reputation as to habitually being involved in minor crimes?

"A   No.

MR. DUMAS: To which we will object—

THE COURT: I'll sustain it as being—

MR. DUMAS: Move for withdrawal of the submission of this cause from the jury.

THE COURT: Overruled.

"Q   Do you know Rick Eldridge's reputation as to being habitually involved in thefts?

"A   No.

MR. DUMAS: To which we will object—

THE COURT: Sustained. Sustained.

MR. DUMAS: Move for a mistrial.

THE COURT: Overruled.

MR. NESBITT: No further questions.

MR. DUMAS: Nothing further."

*Record* at 462–466.

Eldridge contends that by introducing evidence of his character and reputation for truthfulness and peace and quiet, he did not "open the door" to such matters as were contained in the questions of the prosecutor.

■   Once a defendant has put his reputation and character into evidence, the prosecutor may offer evidence as to his bad

character and that evidence may include specific acts of prior misconduct. *Jackson v. State* (1977), 267 Ind. 62, 366 N.E.2d 1186.

> "As has been said, 'while the law gives the defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.'"

*Robertson v. State* (1974), 262 Ind. 562, at 565, 319 N.E.2d 833, at 835–836, quoting *Michelson v. United States* (1948), 335 U.S. 469, at 479, 69 S.Ct. 213, at 220, 93 L.Ed. 168.

Our Supreme Court previously addressed this question in a context similar to the one now before this Court.

> "Specifications 5, 6, and 7 assert error in permitting Harry Pierson, a character witness, who testified to the good reputation of the appellant for peace and quietude, to answer over appellant's objection, the following questions:
>
> 1. Let us assume if it should be a fact, that the defendant has been arrested and convicted several times for other crimes, would that fact change your opinion?
>
> 2. Let us assume that the defendant was arrested and convicted in 1945 for assault and battery, would that change your opinion as to his reputation for peace and quietude?
>
> 3. Let us assume that the defendant in March, 1950, was arrested and convicted for being drunk in a public place, and in September, 1950, was arrested and convicted of the violation of the Fire Arms Act, would that change your opinion as to his reputation for peace and quietude?
>
> "When a defendant tenders his supposed good character in evidence, he thereby invites scrutiny and disclosure of specific instances of his misconduct to depreciate the weight of the testimony of his character witness, although the answers elicited may incidentally impute to him other guilt. The above questions were put in cross-examination to the direct testimony of the witness Pierson as to the good reputation of appellant for peace and quietude and it was proper cross-examination. *Shears v. The State* (1897), 147 Ind. 51, 56, 46 N.E. 331; *Michelson v. United States* (1948), 335 U.S. 469, [484] 69 S.Ct. 213, [222] 93 L.Ed. 168, 178."

*Jordan v. State* (1953), 232 Ind. 265, at 268–269, 110 N.E.2d 751, at 752–753.

Such questioning is qualified however, in that it is proper only as a means of testing the witness's actual knowledge of the defendant's general reputation in the community, and not as a means of discrediting the defendant or of proving the truth of the assertion. *Randolph v. State* (1978), 269 Ind. 31, 378 N.E.2d 828. This is what the prosecutor in this instance was attempting to do: to show that Mr. Nesius did not really know the character of Eldridge.

However, prosecutors should be cautious when pursuing such a line of questioning. As they must be well aware, it is improper conduct for the State to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation for. *See United States v. Harris* (7th Cir. 1976) 542 F.2d 1283 which cites the ABA Standards Relating to the Administration of Criminal Justice: The Prosecution Function § 5.7(d) and 6 J. Wigmore, Evidence § 1808, at 276 (3d ed. 1940).

In this case, the record discloses no factual basis for the prosecutor's questions. However, in light of the fact defense counsel did not object to the questions on those grounds,[1] and appellate counsel did not argue lack of factual basis to the question on appeal, we will not impute such bad faith on the part of this prosecutor.

---

1. Defense counsel did make such an objection to the first question and that objection was sustained. All subsequent objections were on the grounds that the questions were irrelevant and immaterial. Such general objections preserve no error. *Dean v. State* (1982), Ind., 433 N.E.2d 1172. *See also Winningham v. State* (1982), Ind., 432 N.E.2d 24.

Additionally, in this instance, any error in permitting the questions would not require reversal. The evidence of Eldridge's guilt was clearly established beyond a reasonable doubt through the testimony of two of the other men who participated in the crimes with which he was charged and the investigating police officers. An honest and fair-minded jury would have rendered the same verdict even without hearing the questions by the prosecutor. *See England v. State* (1968), 249 Ind. 446, 233 N.E.2d 168; *Temple et al. v. State* (1964), 245 Ind. 21, 195 N.E.2d 850; *Warnke v. State* (1929), 89 Ind.App. 683, 167 N.E. 138. Therefore, Eldridge's convictions are affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, J., concurs with opinion.

GARRARD, Judge, concurring.

I agree with the majority assessment that once the defendant puts his reputation in issue specific acts may be used for impeachment. The questions here posed were not a model for presenting such evidence nor is it clear to me precisely what ground(s) the court granted as a continuing objection.

While specific acts may be delved into to contradict evidence of a reputation for peace and quietude or of truth and veracity, they must be acts that are relevant to those determinations.

I find no such relevance in those questions which sought to bring forth only that the accused may have *used* illicit drugs. They were asked merely in an attempt to prejudice the jury and transcend the bounds of legitimate prosecution. On the other hand the objection that evidence is merely irrelevant and immaterial (which appears to be the ongoing objection) is insufficient to preserve error. *Dean v. State* (1982), Ind., 433 N.E.2d 1172.

I am also inclined to agree that the evidence was such as to render the error harmless beyond a reasonable doubt.

I therefore concur.